Moscoe J. "Buck" BROWN, Petitioner,

v.

The Honorable Ed W. HUGHES, Judge of the Maricopa County Superior Court, Arizona; and the Attorney General of the State of Arizona, Respondents.

Civ. No. 79–858 PHX VAC.

United States District Court,
D. Arizona.

Feb. 6, 1980.

---

Harry A. Stewart, Jr., William H. Mc-Lean, William S. Andrews, Stewart & McLean, Ltd., Phoenix, Ariz., for petitioner.

Charles F. Hyder, Maricopa County Atty., by Steven A. LaMar, Deputy County Atty., Phoenix, Ariz., for respondents.

## OPINION AND ORDER

CORDOVA, District Judge.

This petition for a writ of habeas corpus presents the question whether the constitutional command against exposing one to double jeopardy precludes the State of Arizona from again trying Moscoe J. "Buck" Brown on the same charges as those upon which the jury was unable to agree in the first trial. Petitioner Brown asserts that the trial judge prematurely and contrary to law determined that the jury was unable to reach a unanimous verdict and declared a mistrial, thereby depriving Brown of his constitutional right to have a verdict from that specific jury. The petitioner has exhausted his state remedies, hence the issue is properly before this Court.

The declaration of a mistrial resulted from the following circumstances:

Petitioner was charged by the State of Arizona in a two count amended information with the crimes of attempt to import marijuana and conspiracy to import marijuana. After lengthy pretrial proceedings, trial commenced on February 22, 1979 before the Superior Court of Maricopa County, Arizona. Presentation of witnesses and evidence to the jury continued for 22 actual trial days. At the conclusion of argument on motions for judgment of acquittal or a directed verdict, the trial court noted that the instant case was "the closest case" that it had ever heard where a defendant's motion for a judgment of acquittal was being denied.

On Friday, March 22, 1979, the jurors began their deliberations. The deliberations lasted for approximately 5 to 6 hours on that date. On Monday, March 25, 1979 at 4:30 p. m., after the jurors had deliberated approximately 5½ hours, the Court requested that all counsel meet in chambers to determine the status of the jury's deliberations. In chambers counsel were informed by the trial court that the jury foreman, at 4:02 p. m., had submitted a written note to the court through its bailiff. The note stated that the vote was "11 not guilty to 1 guilty", that the jury was at an impasse, and they requested guidance from the Court. The Court's bailiff orally informed the Court and counsel that according to the foreman, the "holdout" juror was refusing to vote "not guilty" on the basis of some "moral" reason.

Counsel for the petitioner urged the Court to deliver a supplemental instruction to the jury advising the jury that they could only base their decision upon the facts as they determined them to be and upon the law as given by the Court. The Court denied petitioner's request.

At 4:42 p. m. counsel for petitioner requested that a recess be taken until the next morning. Counsel for the State responded that the views of the foreman determine whether there is a mistrial or not, and urged that inquiry be made of the foreman to determine if a mistrial should be called. The Court denied Petitioner's request, stating that it would grant a recess only if the foreman answered yes to an inquiry as to whether further deliberations would be profitable. Counsel for petitioner opposed the declaration of a mistrial. Counsel for the State responded, voicing his desire to "get out" if I could by 5:00 p. m.

At this point in the proceedings, the Court received a message conveyed orally from the foreman of the jury through the bailiff requesting that the jurors be given "at least" 30 more minutes to deliberate. The Court granted the foreman's request.

At 7:00 p. m. in chambers, the Court advised counsel that it would inquire of the jury if further deliberations would be productive. Petitioner strongly opposed a mistrial at this point in time. Petitioner requested that the jury be polled when inquiry was made. The Court denied the request for a poll of the jury. Petitioner took the position that if a mistrial was declared at this point, that double jeopardy would attach.

The jury was called into open court, and the Court, addressing itself to the foreman only, asked whether he was of the opinion that it would be productive to recess for the evening. The foreman responded that it would not. Without a poll and without giving the foreman the opportunity to deliberate with the other jurors regarding the recess or the issue of deadlock, the Court found the jury deadlocked and declared a mistrial.

The Arizona Supreme Court refused to review the mistrial ruling. Petitioner then filed a petition for writ of habeas corpus in this Court.

█ Where a mistrial is premised upon the trial judge's belief that the jury is unable to reach a verdict, the trial court is allowed broad discretion in deciding whether or not "manifest necessity" justified discharge of the jury. The considerations to be balanced, as stated by the Court in *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) are as follows:

"On the one hand, if [the trial court] discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his 'valued right to have his trial completed by a particular tribunal.' But if he fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors."

A State may not put a defendant in jeopardy twice for the same offense, and because jeopardy attaches before a judgment becomes final, this constitutional protection embraces the defendant's valued right to have his trial completed by a particular tribunal. *Arizona v. Washington, supra.* Considering the importance of this right, the prosecutor must bear the burden of demonstrating "manifest necessity" for any mistrial declared over the objection of the defendant.

The Supreme Court has eschewed the mechanical application of an abstract formula and has stated that in considering whether a trial should be terminated without a judgment, the trial court should "take all circumstances into account". *United States v. Perez,* 9 Wheat. 579, 6 L.Ed. 165 (1824). It follows then, in light of this authority, that the reviewing court should consider only those circumstances existing at the time of the trial court's decision as revealed by the record of the proceedings.

In determining whether a trial court has lawfully declared a mistrial because of a hung jury, the courts have set forth the following significant factors which the trial judge may use to determine whether there is a probability that the jury can reach a verdict within a reasonable time:

(1) A timely objection by defendant;

(2) The jury's collective opinion that it cannot agree;

(3) The length of the deliberations of the jury;

(4) The length of the trial;

(5) The complexity of the issues presented to the jury;

(6) Any proper communications which the judge has had with the jury; and

(7) The effects of possible exhaustion and the impact which coercion of further deliberations might have on the verdict. (*Arnold v. McCarthy,* 566 F.2d 1377 (9th Cir. 1978) ).

The crucial factor is the jury's own statement that it was unable to reach a verdict. *United States v. See,* 505 F.2d 845 (9th Cir. 1974), cert. denied, 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673. However, it is not sufficient that the trial court has received a communication that it cannot agree. The trial court must also question the jury to determine independently whether further deliberations might overcome the deadlock. *Arnold v. McCarthy, supra,* at 1387. As stated by the Ninth Circuit in *Arnold v. McCarthy* at 1387:

"Merely questioning the jury foreman may not be sufficient, but this circuit has recently held that questioning the foreman individually and the jury either individually or as a group is satisfactory. *United States v. See, supra,* at 851.

At the trial in the state court, the record indicates that the court was first notified of an impasse by a note from the foreman. Subsequently, the court received a jury request for more time to deliberate. Approximately three hours later the trial court declared a mistrial without addressing the jurors individually or as a group, and after getting only the foreman's state of mind. This Court does not believe that one juror's opinion of a deadlock, even if it is the foreman's, is a sufficient basis for the Court to conclude that the jury is deadlocked. Of course there may be some circumstances in which the statement by the foreman of his state of mind is an expression of the state of mind of the jury collectively as where the Court gives them the

opportunity to deliberate on the issue of a possible deadlock.[1]

Unanimous consent—or even the consent of a majority—cannot be inferred from a silent record. In fact, it is possible that many jurors are deterred from making unsolicited comments in open court due to the formality that accompanies judicial proceedings. The individual jurors must be given a sufficient opportunity to voice their dissent whether it be to the Court, as in the case of a polling of the jury, or whether it be to the foreman, as where an *Allen* charge is given.

Respondents contend that the initial communication sent to the Court by the foreman, indicating that the jury was unable to reach a verdict may have made it less necessary for the Judge to have inquired into the opinions of the other jurors since the jury would presumably have reached a consensus before reporting its deadlock to the Judge by way of a note signed by its foreman. However, in the present case no such presumption can be made. There was an indication by the foreman, subsequent to the first communication, that more time was required by the jury. This was the last communication received by the Court until the jurors were brought into open court and the mistrial declared. There is no indication on the record that the jurors had decided they could not reach a verdict or had discussed that issue after the request by the foreman for more time. Indeed, the last communication by the foreman to the Court indicated that there was a possibility that a verdict could be reached.

The language of the note initially received by the Court is by no means unambiguous [2] and does not indicate that the issue of deadlock had interjected itself into the deliberations of the jury. The foreman stated that the jury had reached an impasse and requested the Court to further instruct the jury. The "impasse" referred to cannot under the circumstances be assumed to have been an unequivocal statement that the jury was deadlocked. The language of the note must be considered in light of the subsequent request for more time to deliberate and of the Court's knowledge of the possibility that a holdout juror refused to vote not guilty based upon moral considerations. The request by the jury foreman that the Court "direct our actions" was consistent with petitioner's request that the Court instruct the jury as to the proper legal basis upon which a jury verdict must rest. The Court did not further instruct the jury or direct its action and the record reveals a complete absence of any fact from which the Court could reasonably conclude that the jury had considered the issue of deadlock.

Thrown into the balance are the facts that the trial lasted for 22 days and the jury's deliberations lasted for only 2 days. There is no uniform minimum period during which a jury must deliberate before the Court may declare a jury deadlocked. However, considering the jury's indication that further deliberations might be productive prior to the Court returning the jurors into open court, and in light of the fact that the trial involved the testimony of numerous witnesses whose credibility had to be weighed, the absence of a unanimous verdict after approximately 2 days of deliberations is not irreconcilable with the jury's ability to arrive at a verdict.

---

1. *United States v. See, supra,* is distinguishable in that in that case the foreman wrote a note stating that the jury was deadlocked. Afterwards, the trial court brought the jurors out into open court and directed its inquiries to the entire jury. Several jurors responded to the court's inquiries. Furthermore, the defendant in *See* failed to object to the procedure utilized by the court and failed to request that the jury be polled.

The recently decided case of *Rogers v. United States,* 609 F.2d 1315 (9th Cir. 1979) is distinguishable in that there, although the court addressed only the foreman in open court, the jury had been given an *Allen* charge prior to being summoned into open court. In addition, the defendant failed to object or suggest that he would prefer further deliberation.

2. The note sent by the foreman to the Court reads as follows:

At this time the vote is 11 not guilty to 1 guilty. We are at a state of impasse. Please direct our actions.

The record does not reveal an apparent risk of coercion of an already exhausted jury which could have resulted in an unfair verdict.

Finally, petitioner's counsel made a timely objection to the declaration of a mistrial and requested that the jurors be polled. Hence, the record is not bare of appropriate objections as were the cases in *Arnold v. McCarthy, supra, United States v. See, supra,* and *Rogers v. United States, supra.*

From the facts and circumstances as contained in the record, it is clear that timely objection was made by defense counsel to a mistrial, the trial took 22 trial days, the jury deliberated less than 2 working days, the jury's collective opinion that it was deadlocked was not obtained, the jury advised the Court that it was at an impasse and asked for the Court's guidance, the Court did not offer direction by instruction or otherwise, the jury asked for further time to deliberate after notifying the Court of the impasse, and under all the circumstances, there was not a "manifest necessity" for a mistrial under the law.

The Court finds that the defendant has been once placed in jeopardy for the offenses for which he was tried and that a retrial of the defendant on the same charges would constitute double jeopardy.

THEREFORE, IT IS ORDERED granting defendant's Petition for Writ of Habeas Corpus, directing his release on these charges, and that retrial of the defendant be and hereby is barred by law.